Good morning, Your Honors. Good morning. I represent Mr. Blossom. This is a case about a term that has been used for many, many years in many contexts, a good faith belief. It's been used in trademark law, it's been used in patent law, it's been used in copyright law, and it's been used in Rule 11, which hopefully all lawyers who practice here should be familiar with. And in every context, good faith belief has always been taken to mean that a person, at a minimum, did a reasonable investigation of the facts under the circumstances. So Counsel, do you then narrow this case down to the issue of whether or not the defendants acted in good faith? No. I have no reason to think that that's, frankly, an issue, whether or not they acted in good faith in the sense that did they act out of malice knowing that what they were doing was wrong? Because that's a reasonable interpretation. Let me rephrase my question. Okay. Do you see the issue in this case being whether or not the defendants acted in good faith under the Digital Millennium Copyright Act? As it is the only issue we have in this case. I think it's the only issue of substance. There are other issues that have been raised, but I think this is the primary issue. Okay. As I said, this has been a phrase that has been used in many contexts. In trademark law, I remember one case, essentially, the suggestion was you should think of it as if you were shutting down somebody else's business. I think that that's a reasonable way of looking at it, that what we have here is we have a huge shifting of the burden. If you go back, I cited a book written by a professor at the University of Wisconsin in the 1930s, it was cited by the U.S. Supreme Court a couple of occasions, about the history of the printing press. And we, of course, are back at that same sort of technological revolution again a few hundred years later. And what happens is that there's sort of a rush to find a way to limit the damage that's caused by the change in technology. And there are always people who will have a long laundry list of horrible things that will come as a result of the change in technology. William Sapphire wrote a good book about Alexander Hamilton and the printing press. Counsel, let me ask you this. If we accept your definition of good faith as incorporating a requirement of reasonable investigation, how were the defendants deficient in conducting their investigation of the website at issue? Well, the defendants were technologically sophisticated with a substantial interest and knowledge in the area. They had plenty of resources. I don't think there's any excuse at a minimum for checking to be actually true what they essentially had a reasonable suspicion of, which is that maybe if you went to this website, you might possibly be able to download The wording on the website was a little more definitive than might be possible to likely download, wasn't it? It was a come on. It was a little bit of a hustle. What exactly? It said download now. We've been talking about Long's Drugstore and products that are sold there, at least you were. And this is something that's on the counter today at the Long's Drugstore just across the street. What it says is atomic planes, a new age dawns for private aircraft powered by miniature nuclear reactors. Well, that I think is very similar to download movies. It's something that might happen in the future. It's something that technology is bringing rapidly to us. And in fact, Mr. Rossi's cover, if you will, of his publication was vastly more realistic than this. Counsel, if people, I mean, people who are not technologically dinosaurs, if one goes to a screen and it says download now, I don't think further investigation is required because before one can reasonably infer that if you press that button, you would download something. One could reasonably suspect. Not suspect. The question is no. Do you know? No implies that one has knowledge. Good faith requires absolute knowledge. That's your definition of good faith? Not absolute knowledge, but good faith knowledge. You can accuse your neighbor of murdering his wife if you have good faith knowledge. That doesn't mean it's a fact. You can accuse anyone of anything with or without good faith knowledge. Well, without being subject to being sued. I mean, that's the test. Are you doing something actionable? And it shouldn't be. You sued the defendants in this case. They didn't sue. They did the equivalent of filing a lawsuit. If it weren't for the Digital Millennium Copyright Act, then what would they have had to do? They would have had to go to court. They would have had to, if they went to federal court, they would have had to meet the Rule 11 standard of a good faith investigation before they filed their lawsuit, before they could get an injunction to shut down what is the modern day that people whose products were being infringed upon would not have to go through the time, trouble, and expense of a lawsuit, but could move quickly to shut down the infringers. So that's the purpose of the Act. But the purpose of the Act cannot be interpreted to get around the protections of the First Amendment. And that is what an interpretation that says that all you have to do is have a reasonable suspicion, which I just have to disagree with you. I think that if you look at this cover, you might have a reasonable suspicion that somewhere in the United States there's a company making or trying to make or starting to make atomic powered airplanes, but you don't know it. But most people don't have common experience with nuclear reactors and building airplanes. But the general populace has a pretty good feel for how the Internet works. And I would venture to say that the general populace, if they see a queue that says download now, would reasonably expect that whatever is behind that bar can be accessed by triggering that bar. And I don't think that there's a requirement that you have to actually download it in order to have that reasonable expectation. First of all, you're shifting the question because the question is not... I can do that though. I understand that, but I can notice it. You're shifting the question from whether or not they acted reasonably or whether or not a consumer might be reasonable in being upset that the $4 or $5 he spent to buy this magazine or to download now... But you're arguing for an objective standard of reasonableness. And so it's fair to say what a reasonable person would do if you're arguing for an objective standard of reasonableness. Well, I think a reasonable... The only way I think that you can do this and have it meet the First Amendment requirement of protecting the free press is to say that it has to be reasonable in view of all the circumstances, including who's making the accusation. And they're the experts. I mean, they know all about it. They've got a whole enterprise set up to do it. If they can shut Mr. Rossi down based on what really is just a possibility, it's a reasonable suspicion that there might be something going on there. Secondly, it does have to be pointed out that while if you look at the web page carefully that was copied, it doesn't actually say, download these movies in their entirety for free. It says, download movies. And it is true that if you went to his website, as I understand it at the time, you could have found links to places where you could download movies that were from the dawn of the age of movies, that were student movies. You could have downloaded some movies and... But Kelso didn't even some of his own subscribers complain because they were of the view that they could download movies. And isn't that pretty telling evidence that a reasonable person would view the website and think they could download movies now? Well, actually, it's spectacular evidence to the contrary because the testimony at deposition, which is not contradicted or certainly nothing in their record, to the contrary was that a few, five, six out of thousands had done that. So... Had done what? Had complained. That 99.9 percent, doing the math in my head, did not complain. In fact, he has many, many people who continue to subscribe. It's a publication. It makes, you know, some come-ons. And then when you go there, you can either decide that the information that you get is worth a few dollars a month or not. Many people are incredibly fascinated by the whole idea of being able to download movies. That doesn't mean they only want to do it illegally. Napster was illegal, as it turned out, but Apple's iPod program is legal. And that's downloading movies. This is something that is the equivalent of popular electronics in 1935 when, you know, the exciting thing was if you could build your own single crystal radio to pick up WLS in Chicago and you live 200 miles away. That was a great thing at the time. We've moved beyond that. But some of the basic principles that apply are the ones that applied a long time ago. And you have no history in the United States of any law that ever was passed by Congress, any regulation that was ever put into effect by a federal agency that required a good-faith belief being interpreted to mean that you don't have to do a reasonable investigation. What case are you relying upon for the contrary proposition that a good-faith belief always encompasses a reasonable investigation? What case are you relying upon to support that assertion? We've cited cases involving Rule 11. We've cited cases involving patent law and trademark law. I really can't. There's no one case that stands out. There are dozens of cases that stand for the proposition that good-faith belief in Congress. Imperatively. So your position is good-faith belief can never be established without an investigation. That's your blanket position, without exception. I believe that we have submitted many, many examples where the courts have found that that was the reasonable and correct interpretation. I don't believe they've interpreted, found any cases to the contrary. I think they'll say something different when they come up. But I'm just asking you, is your position that a good-faith always includes a reasonable investigation component? Is that your argument? If you are not personally a witness to what happened, if someone calls you up, as was the case here, and says, we think that he has a site like that, yes, I think that if you haven't seen someone downloading movies from that site, that some additional investigation is required. When I say additional investigation, I think in every case that we've talked about or seen, it assumes that somebody reported something to someone, not that they personally were there when the vendor sold the T-shirts with the trademark that was a copyright infringement, not that they were personally there when the copyrighted material was being printed by the newspaper or whatever. Sure, if you're a personal witness in circumstances where you have no doubt, that's it. So basically, you're arguing that the defendants would have had to establish actual infringement before they could have taken advantage of the provisions? Not at all. The provisions call for a good faith belief. What would that have encompassed in this case, in your opinion? In this particular case, given their resources and their sophistication, I think it would have required that they at least make an effort to download a movie from the site to see if there were any movies that specifically were owned by their copyright owner corporations that they were working with. And I think that in the absence of... Compare this to a simple sting for vending on the street without a license. I happen to have represented a bunch of artists in Los Angeles on the Venice boardwalk. And when the L.A. police wanted to set up a sting for vending art, which eventually the Ninth Circuit said they could do, but what they did is they gave people the money. They went to the trouble. They set up a case. They put together a case. They did a good faith investigation. So we're talking about a criminal case, which is a little different. Well, it doesn't seem to me that under the First Amendment and the United States history of the First Amendment that it's reasonable that it's necessary to go to more trouble to set somebody up for selling juice drinks on the Venice boardwalk than it is for somebody to shut down the equivalent of a digital printing press. For one thing, in the criminal context, you have a probable cause requirement. Well, that's a good point. I think that a reasonable belief is the equivalent of probable cause. And I do not think they have probable cause. I don't think there's probable cause to arrest these people for selling nuclear-powered airplanes. I don't think there's probable cause to arrest Mr. Rossi for fraudulently... So basically you're equating good faith with probable cause under the Fourth Amendment. That's what I thought you were doing. I kind of thought you did, but I'm saying it's close. It's very, very similar. I'm not sure exactly. Well, I'm just trying to understand what your argument is. I'm trying to make it clear, I swear. I do try. This has been, I think, difficult to overstate in terms of how broad the power of content owners is. I guess we all know that from the amicus briefs. I mean, what we have here, essentially, is a war between content and carriers. And, fortunately, it's no shooting, but it is. It's a big battle. In fact, the New York Times just had an article a couple of weeks ago essentially saying that the war was over between the big carriers, AT&T, BellSouth, MCI, and the big content owners, the NFL, the Motion Picture Association of America, and so on. It just seems as though, given the history of deference to people putting out information in this country, that what essentially, for the person who owns the company that's providing the service of being the printing press, that they should not be confronted with what appear to be official federal documents, something that looks at least as impressive as a lawsuit. And the only burden on the person is that if they just look at something and it looks like it might possibly be, you know, they're suspicious, it might possibly be a copyright violation for one of the people that they work for, that then they can go send something out that has the effect, in all practical cases, of shutting it down. What would be the bottom line in this case if you were deciding it? What do you think the court should decide? I think that the court should decide that given the long history of concerning, I'm sorry, considering the meaning of the phrase good faith belief, that the court should say that that meaning has become a part of the legal lexicon, if you will, and that that should be the meaning for this law, too. And I think it's sort of a little bit certain. I would gather that that is the meaning of this law, but I think you want more than a good faith belief. You want a good faith belief based on or a good faith belief formed after, but you want something additional. You don't want them to read what your client said he's going to do and then say, oh, oh, there's a danger for us. I have to say that if this wasn't in the context of a cover of a website, if this wasn't a place, I mean, you look at the cover of Cosmopolitan, things are not always exactly as they seem. I think we all know that. You know, when I first bought this magazine when I was about eight years old, I was kind of disappointed because some of the covers made me think that things were coming sooner technologically than they were. And I suspect that when my father bought a copy of this magazine, which had been published since before 1900, that probably he was a little disappointed, too. That is not grounds for shutting down the magazine. Grounds for shutting down the magazine is if the copyright holder either personally knows that the person is offering it or else makes a good faith investigation if they haven't seen it personally. I think I understand your point. But the difficulty, and that's why you've got the new regulation, if you're doing what you say on your cover, a lot of damage can be done before you can do what you would like to have the law require. Isn't that pretty much it? That's why I wish we could all sit down and read Safar's book and the book that we've cited. Because these same arguments were made about the printing press. The printing press was viewed as a nightmare because the printing press could distribute slander and libel. It could say that you were guilty of a crime and prejudice the community against you that was punishable by death. This was a huge concern for the first 100, 150 years that the printing press moved from a— we go back to Gutenberg for the original— in the United States, the first 100 years roughly, this was a constant issue. This is a terrible, terrible problem. But in the United States, in the Minnesota case, the Minnesota newspaper was allowed to publish information that was generally viewed as being slanderous and libelous. And the remedy, they said, was you go sue them afterwards. You do not get to shut down a newspaper in the United States even if you can show us that the material is libelous or slanderous. Counsel, how does Section 512F of the Act dovetail into your argument? How does that affect your argument? If Section 512F requires a knowing misrepresentation for a cause of action against the reporter, how does that fit into your argument that to shut it down requires investigation? I have to say I don't know what 512F says. It would take me a little while to find it here. Oh, okay. If you can tell me roughly what it is. I'm sorry. That's all right. It's the Act that you brought your claim under, the digital. You mean a whole? I'm just not good with numbers. I have to look. Okay, that's fine. Maybe you can do it on rebuttal. We'll give you a minute for it. Okay. All right. Thank you. Thank you. I reserve time. Yeah. Good morning, Your Honors. My name is Russell Frackman, and I represent the defendants and appellees. And if I may, I would like to start where Your Honor, Judge Rawlinson started, and that's with the actual statement on Mr. Rossi's website. It's in the record starting at page 33. And I know Your Honors are aware of this, but just to reiterate, he says, join to download full-length movies online now, new movies every month, full-length downloadable movies now downloadable, illustrated by 10 or 15 shots of actual artwork from motion pictures. Now, I would submit to the court that you don't even have to have a general feel for the Internet to interpret what Mr. Rossi is saying there as that he is making available for download, in other words, for copying, copyrighted motion pictures. And I think, Your Honor, counsel's argument proved it for me. What counsel said to the court was that this was a hustle. Well, what were they trying to do with their hustle? They were trying to recruit subscribers who would be convinced that full-length motion pictures were downloadable. That was the hustle. And indeed, there were more than just one or two or a few of Mr. Rossi's subscribers who were taken in by the hustle. In the record, first at page 64, which is from Mr. Rossi's deposition, he was asked about whether he had any communications from members. And the question was, what kind of complaints have you received about that? And his answer was, sometimes they made a mistake, and they think that there's actually movies for downloading. And then you go to page 186 of the record, and the question again of Mr. Rossi, how many people were complaining because they thought they were getting movies for downloading? Answer, I don't know, approximately 2%. Now, 2% of 10,000 subscribers is 200 people, 200 people who went to the extent of complaining. We don't know how many other people were taken in by this hustle. So I would agree, number one, with your honors, Judge Rawlinson's, I think, first question, or what I think was the import of your first question, and that is no matter what standard applies here, subject of good faith or object of reasonableness, our clients complied with that standard. But I think the court has to take another step here, and that is to actually define or, I believe, to simply reiterate what the law is as to what a faith belief is in this context. And I think that is crystal clear. To borrow a question from your honor, Judge Rawlinson, my primary authority for that is Webster's Dictionary. And this court and other courts have often said when the language is clear on its face, and we have quoted both Webster's Dictionary and Black's Law Dictionary, as well as numerous statutes and case law that define good faith as subject of belief. And to answer another one of your questions, Judge Rawlinson, that is perfectly consistent with 512F. 512F is the converse of a good faith belief. Again, a subjective, knowing, material misrepresentation. This entire statute, 512, the takedown and putback procedures, are described and circumscribed by good faith or bad faith subjective belief. It comes into play not only by the copyright holder who gives notice, it comes into play by the ISP who is not responsible for, in good faith, taking down alleged infringing material. And it comes into play, perhaps most importantly for our situation, by 512G, the putback procedure, where the subscriber may, in good faith, state that the material noticed was noticed or taken down by mistake. This is a good faith subjective statute. And as Judge Farris said, there is a reason for it. I go beyond the language, although I don't think this Court needs to go beyond the language of the statute, to describe the reason for a good faith belief. First, I point to the evidence in the record, and that is that our clients in 2001 and 2002, and our clients are just one of many, as the Court knows from other cases, the Recording Industry Association of America, for one, who on behalf of their clients monitor the Internet to determine infringement. Our clients, in the record, sent 38,000 takedown notices in the years 2001 and 2002. And they didn't send them willy-nilly. There were 180,000 sites that they looked at. They only sent notices to 20% or so after looking at the sites. Now, if they had to have evidence, and I think counsel misstated when he talked about, I think in answer to your question, Judge Rawlinson, what standard he was arguing for here, because in his opening brief at page 9, counsel says the primary issue on appeal becomes, quote, whether or not the good faith provision of the DMCA requires a copyright holder to conduct an investigation to establish actual infringement prior to sending a notice to an ISP. Well, if that was the standard, 38,000 times my clients would have to download at least one movie, if not more than one, which means probably literally hundreds of thousands of hours downloading movies. It also means hundreds of thousands of dollars paid to putative infringers to become a subscriber because you can't join Mr. Rossi's website without paying money. And then once you do that, you have to sign terms of service. You're entering into a contract with him. And all of this, while, as the court well knows, there is viral distribution over the Internet of potentially infringing material, and I will point out to the court that not one time out of 38,000, not one time out of 38,000, and this goes to, I would submit, good faith, other than from Mr. Rossi, has our client been sued either under the DMCA or under state law. Mr. Rossi had available, let me back up for a second if I may, Your Honors, statute read as a whole, specifically 512C, 512F, and 512G, represents a well-considered, and the court well knows how long it took for Congress to arrive at the Digital Millennium Copyright Act. We have in the record through the legislative history the negotiations that took place between all of the various factors involved, all of the various constituencies, and they arrived at this very well-considered process that does depend on good faith, that does depend on expedition, and that gives not only to our clients an expeditious right to request removal, but it gives to the subscriber the right expeditiously to file a put-back notice. Mr. Rossi decided not to do that. In fact, he decided this was good for business, and he would post the MPAA's letter on his website, and maybe this was another one of his hustles, I don't know, and maybe it succeeded. It appears to have succeeded from the evidence in the record that his clientele increased during this period of time. But he had a remedy. In fact, he had two remedies available to him, as does anyone who's in his position. He could file a put-back notice. He could file a lawsuit under 512F for a knowing material misrepresentation. Now, I would also submit to the court, having viewed for the court what the burden would be on copyright holders, that there is no such concomitant burden on Rossi or on subscribers. First, the court should bear in mind the whole reason probably, or at least one of the reasons, that copyright holders must notify the ISP is that they have no other way of getting in touch, generally, with the website. It's the ISP who knows who the subscriber is, and the ISP must notify that subscriber about the takedown notice. And that subscriber may then limit the period, if not avoid it completely, by talking to his ISP and convincing them that he's not doing anything wrong. By talking to the person who sent the notice, remember, Your Honors, the notice must identify how the subscriber can get a hold of the copyright holder. By talking to the copyright holder, and here, in this case, the evidence is that Mr. Rossi did not try to do that. Maybe he tried. He tried once to call the MPAA. He says in the record he got an answering machine and never called again and never left a message. Or, he can do as Mr. Rossi did, unfortunately he can, which is to find another ISP. There are many out there, and as the court knows from Mr. Rossi's brief, that resulted in his website being down anywhere from one second, which maybe is another one of his hustles, to three days at the most. Compare that to the enormity of the potential damage to copyright holders if this expedited procedure is not followed. So I would submit to the court that perhaps three things in winding up, four things. Number one, the clear language of the statute indicates that a subject of good faith standard applies here. And there are all sorts of factors that I could describe to the court why clearly there was subject of good faith here. The normal process followed, the client, Mr. Rossi's representations on the website, the fact that they had never had problems with it before, and so on. But we don't have to get there, because as counsel conceded and as Mr. Rossi conceded in the district court, they don't dispute that our client had subjective good faith, they just argue that that's not the standard. So number one, there was subjective good faith. Number two, the statute by its plain language requires only subjective good faith. Number three, the whole structure of the statute can only be read to require subjective good faith, which is consistent with virtually every statute that we've been able to find in case law describing that statute, which we've cited in our brief from page 13 on that talks about good faith. The most telling of which, I think, Your Honors, is the one that Mr. Rossi first cited, Federal Rule 11, which had to be amended to specifically require a reasonable investigation, language that is totally absent from the DMCA. There is nothing in the DMCA that talks about reasonable investigation. There's nothing in the DMCA that talks about providing a copy of a download. There's nothing in the DMCA that talks about actual evidence of actual infringement, and there's certainly nothing in the DMCA that talks about probable cause or absolute personal knowledge. And then finally, or next to finally, and again, I think the Court doesn't need to go here, because I think everything I've said is clear. Under any standard, reasonable, objective, or subjective good faith, our clients would not have violated this statute. It is based on Mr. Rossi's own language, his own hustle that confused his own clients. And as a result of all of that, as the District Court properly found, none of Mr. Rossi's state law claims can survive, because there was justification for the notice that he claims to be interference, because it was not outrageous conduct that is required for infliction of emotional distress. Far from it, it was compliance with the federal statute, and because it was not defamatory, because it was sent only to people who were interested in its publication, and it was Mr. Rossi himself who publicized it in his own words to the rest of the world. If the Court has any questions, I'd be happy to answer them. Thank you, counsel. We'll give you one minute for rebuttal. You did use all of your time. Thank you very much. Just a couple of points. Essentially, the argument that's being made here, as I understand it, is that if we can't deal with this in an emergency way, then we're going to suffer enormous damages. Well, the enormous damages are speculative at best. Their theory is that if somebody downloads a movie for free, that they're losing money because otherwise they would have paid them for it, and that's just silly. If I was trying to figure out how many Rolls Royces I would sell, I wouldn't give them away for a week and then multiply it by 52. So their damages are very speculative. That's been covered largely in the newspaper. Several studies have come out pointing out that their calculations are basically absurd. But the important thing is that during times of war, there's an issue of whether or not to suspend the Bill of Rights. There's nothing that they can point to that begins to prove that, and that's what we're talking about. They don't have subjective good faith. They don't know, they don't believe that Mr. Rossi was offering movies for download. So you mean they don't have subjective good faith as you define it, and you define it as impossible to come by unless there has been an objective investigation? No, if they were there and saw it, then they don't need to make an investigation. They know it as best they can as a fact. Do you agree with opposing counsel that you require a showing of actual infringement to meet the standard of good faith under the Act? I think that they have to have a subjective good faith belief that actual infringement either is happening or will happen if you try to do whatever it is you're going to try to do. Not that it's just a theoretical possibility. What they had was reasonable suspicion. In any criminal context, in any other context in the English language, they had a reasonable suspicion that Mr. Rossi might be doing something which the evidence shows he wasn't. And that's all they had. They didn't have a good faith belief, and surely at the least they should have to have a true good faith belief. As it's been interpreted, the fact that Rule 11 was amended, I can't swear to this, but I have a belief. A good faith belief? Well, no, I think I have a reasonable suspicion, is what I have. A pretty good suspicion, wandering over towards the beginning of a belief. And that is, I think the rule was amended because it had been up in the circuits and that that was the way it was going, but they decided to amend it. All right, counsel, we understand your argument. Thank you to both counsel for excellent arguments. That completes the calendar for today, and this session of court is in recess.
judges: Silverman, W. Fletcher, Rawlinson